# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

November 16, 1998

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,
DEPARTMENT OF CHILDREN'S
SERVICES,

      Petitioner/Appellee,

VS.

BONNIE FINEOUT,

      Defendant/Appellant,

CLAYTON FINEOUT,

      Defendant.

IN THE MATTER OF:

CLAYTON VANCE FINEOUT, JR.,
D.O.B. 3-22-87; REBECCA LOUISE
FINEOUT, D.O.B. 3-26-88; JEREMY
VANCE FINEOUT, D.O.B. 11-17-83

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal No.
01-A-01-9710-JV-00582

Robertson Juvenile
No. 10725

APPEALED FROM THE JUVENILE COURT OF ROBERTSON COUNTY
AT SPRINGFIELD, TENNESSEE

THE HONORABLE BURTON GLOVER, JUDGE

JOHN KNOX WALKUP
Attorney General & Reporter

DOUGLAS EARL DIMOND
Assistant Attorney General
425 Fifth Avenue, North
Nashville, Tennessee 37243-0499
      Attorney for Petitioner/Appellee

JOHN B. HOLT
HOLT & KROEGER
121 5th Avenue West
Springfield, Tennessee 37172
      Attorney for Defendant/Appellant

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# OPINION

The trial court terminated the mother's parental rights, following a hearing for which she failed to appear. She argues on appeal that the court erred in refusing to grant her a continuance, and that the Department of Children's Services failed to establish sufficient grounds for termination of parental rights under Tenn. Code Ann. § 36-1-113. We affirm the trial court.

## I.

The State of Tennessee took protective custody of the three natural children of Clayton Fineout, Sr. and Bonnie Fineout on December 31, 1992, after the children alleged that their father had committed acts of physical and sexual abuse against all of them. At the time, Mr. Fineout had custody of the children and Ms. Fineout was not living with him.

On January 16, 1993, the Juvenile Court of Robertson County found the children to be abused and neglected, and ordered that they remain in the custody of the Department of Children's Services (DCS). The oldest child, Jeremy Vance Fineout, was nine years old at the time. Clayton Vance Fineout Jr. was five, and Rebecca Louise Fineout was four.

The children remained in the custody of DCS up to and including the time of the hearing below, well over four years. During much of that time, DCS attempted to work with Ms. Fineout with the ultimate goal of reunifying her with her children. The Department created detailed plans of care for each of the three children, as well as for both parents, which were revised and followed up at regular intervals.

The plan for the parents included requirements that they cooperate with any treatment recommendations made by the children's therapist; that they enroll and

participate in various forms of counseling and education, including parenting classes, family counseling, and alcohol and drug counseling; that they keep DHS informed of changes of address, phone number and employment; that they maintain their relationship with the children through regular supervised visits; and that they provide an appropriate environment to meet their children's needs. Mr. Fineout was also required to undergo a psychological evaluation, to attend sex offender counseling and to admit to abuse of his children.

Mr. Fineout did not comply with any of the requirements of the plan of care, and the proof shows that he did not visit with his children after September of 1993, that he did not inform DCS when he changed his residence, and that he did not tender any sort of support to the children in any way. Bonnie Fineout did attempt to comply with some of the requirements set out by the plan of care, but her efforts were sporadic and inconsistent, with long periods during which she had no contact with the children or with DCS whatsoever.

On February 27, 1997, DCS filed a petition in the Robertson County Juvenile Court to terminate the parental rights of Bonnie and Clayton Fineout. Bonnie Fineout was living in Decherd, Tennessee at the time, and service was obtained on her on March 21, 1997. Service was also obtained on Clayton Fineout, but only with difficulty, because he had not informed the Department of his Gallatin, Tennessee address.

Neither of the parents appeared in court on the day of trial, April 24, 1997. Ms. Fineout's attorney told the court that his client had assured him that she would come, but had telephoned him that morning to say that her ride had fallen through. The attorney accordingly moved the court for a continuance, which the court denied.

The court heard testimony by Anne Marie Bryant, Julie Steele and Kimberly Jordan, social workers who had worked extensively with the Fineout children and with their parents and foster parents. Ms. Fineout's attorney was able to cross-examine all three. The Court also reviewed a written report in support of the petition by the children's guardian ad litem.

On August 27, 1997, the court entered a Final Decree of Guardianship which terminated the parental rights of both parents, and placed custody of the children in DCS, with the right to place the children for adoption, and to consent to such adoption in loco parentis. Bonnie Fineout appealed. Clayton Fineout, Sr. did not appeal.

## II. The Continuance

Ms. Fineout argues that the trial court abused its discretion by failing to grant her a continuance when it learned that she would be unable to attend. While we agree that the trial court should not lightly decide to proceed with trial in the absence of a defendant who wishes to contest the termination of her parental rights, we believe that under the circumstances of this case, the trial court's decision was well within its discretion.

It is well-established that the decision to grant or to refuse to grant a continuance is a matter within the sound discretion of the trial court, and will not be reversed absent a clear showing that the court has abused its discretion in some way. *Morrow v. Drumwright*, 304 S.W.2d 313 (Tenn. 1957). The court retains that discretion, even when the question before it is one of termination of parental rights. *State Department of Human Services v. Hauck*, 872 S.W.2d 916 (Tenn. App. 1993).

In order to show an abuse of discretion, a party has the burden to "show some prejudice or surprise which arises from the trial court's failure to grant the

continuance." *Commissioner of the Department of Transportation v. Hall*, 635 S.W.2d 110 (Tenn. 1982). In the present case, there is clearly no showing of surprise. Ms. Fineout received ample notice of the trial, and according to her attorney, she intended to be present up until 11:00 on the morning of trial, when she informed him she was unable to get transportation. Further, the trial court was aware that Ms. Fineout had frequently missed appointments throughout the case, and her attorney was unable to guarantee her presence if the trial was continued to another date.

Turning to the question of prejudice, we note that the exercise of the trial court's discretion is evaluated in terms of the information before it at the time the Motion for Continuance is argued. It is thus incumbent upon Ms. Fineout to show us that she was prejudiced by the continuance because at the time of trial she was prepared to present evidence of her fitness for parental responsibilities. A careful reading of her brief on appeal does not suggest that she was able to produce any such evidence. Nor does she allege that there have been any subsequent changes in her situation to indicate her readiness to care for the children appropriately. We are thus obligated to find that the trial court did not err in refusing to grant her a continuance.

### III. The Trial Court's Grounds

Our courts have recognized that parents have a fundamental right to the care, custody and control of their children. *Meyer v. Nebraska* 262 U.S. 390, 399 (1923). However parental rights are not absolute, and may be terminated upon proper grounds. Due process requires that these grounds be established by clear and convincing evidence. *Santosky v. Kramer,* 455 U.S. 745 (1982).

The statute that controls proceedings for the termination of parental rights in Tennessee is Tenn. Code Ann. § 36-1-113. The standards that must be met before such a termination is ordered are stated in the statute as follows:

(c)     Termination of parental or guardianship rights must be based upon:

(1)     A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

Possible grounds for termination of parental rights include the following:

(g)(1)  Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

(2)     There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

The trial court stated in its final order that the termination of Mr. Fineout's parental rights was based upon the ground of willful abandonment.  Ms. Fineout's rights were terminated because of two separate and independent grounds: non-compliance with the plan of care, and the persistence of conditions preventing the children from safely returning to her care.  She argues on appeal that neither of these grounds has been proven by clear and convincing evidence.

**IV.  Failure to Follow The Plan of Care**

Through her attorney, Ms. Fineout contends that the proof adduced at trial does not rise to the level of substantial non-compliance with the plan of care, and that where she failed to comply, it was either because that portion of the plan was inapplicable to her, or it was due to the contributory fault of the Department. We disagree.

The proof shows that Ms. Fineout made some attempts to comply with the DCS plan, but her efforts were not consistent or successful enough to benefit her or her children. DCS had arranged therapy and counseling sessions to enable her to obtain appropriate parenting skills, and to deal with her other problems. Her caseworkers explained on numerous occasions why it was important for her to attend these sessions. Ms. Fineout went to several therapists, but was never released from therapy, and she never completed her counseling, in part because she canceled or failed to show up for a majority of her appointments.

The appellant argues that since she showed up for some sessions, DCS failed to demonstrate that her non-compliance was substantial. Ms. Fineout also argues that some of the kinds of counseling in the plan were unnecessary, such as the marital counseling (Mr. and Ms. Fineout are separated but not divorced) and the alcohol and drug counseling (she denied having a problem). We note, however, that there was some evidence in the record of drug or alcohol problems.

Probably more important, however, was the fact that she failed to attend parenting classes or to make any appreciable headway in learning necessary parenting skills. In light of the special needs of the children, and her inability to discipline them, her failure to attend those parenting classes amounts in itself to substantial non-compliance with the plan of care.

Another part of the plan involved regular supervised visits with the children. Ms. Fineout missed a great many of those visits for one reason or another.

Sometimes she would call to cancel the visits, but sometimes she would simply not show up, and not call. Between September of 1995 and March of 1996, she did not visit at all.

In September of 1995, she left Tennessee for Florida to move in with her mother. At about the same time, she sent one of her social workers a letter to the effect that she wanted to give up her rights as a mother because she felt the children were better off in the care of their foster parents than they would be with her. However in March of 1996, Ms. Fineout returned to Tennessee and requested visitation. DCS arranged a four-hour visit. The mother returned the children after two hours, because she was unable to control them.

The plan of care also required Ms. Fineout to establish a stable home for her children, to meet their basic needs, and to establish and maintain employment. There was no evidence that she accomplished any of these vital tasks. The evidence showed that after DCS took custody of her children, she moved from place to place, without establishing a stable address. She rarely brought clothes or food when she visited the children. Though she worked at various jobs, she never established a stable employment pattern. We believe the record overwhelmingly shows substantial non-compliance with the plan of care.

### V. Persistent Conditions

The appellant objects to the trial court's application of the grounds for termination found in 35-6-113(g)(3)(A). Her argument is that Clayton and Bonnie Fineout are no longer living together, and that therefore, the conditions that led to the children's removal from the home (abuse by the father) no longer exist.

This argument ignores the fact that the statute does not only permit termination of parental rights because of "the conditions that led to the child's

removal," but also for the persistence of "other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s) . . . ."

The record reveals that the children have all been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) for which they are taking Ritalin. They also have other behavioral problems that may be related to the abuse they suffered at the hands of their father. While they are currently doing well in foster care, the social workers and the guardian ad litem agree that a safe and permanent home environment is the best alternative for their continued development. Because of the difficulty of dealing effectively with ADHD children, they especially need to be in the care of someone who possesses excellent parenting skills. We note again that Ms. Fineout failed to attend most of the parenting classes that were arranged for her, and was unable to demonstrate that she learned anything from the classes she did attend.

The guardian ad litem made a phone call to Ms. Fineout on April 8, 1997, virtually on the eve of the hearing of this case. His summary of that phone call reveals that in the more than four years since her children were placed in the custody of DCS, Ms. Fineout made no progress in creating a home environment that would enable her to care for her children in a way that would be beneficial to them:

> ". . . she was not working, had no driver's license, had criminal warrants outstanding against her in Davidson County and resides in a single axle travel trailer in Deckerd (sic), Tennessee. When asked about a specific plan of future care for these children in the event she regained custody, Ms. Fineout's response was 'to take care of them'. Ms. Fineout could not name anyone as a substitute caregiver if she had to leave the children for any reason. The Guardian Ad Litem found that Ms. Fineout was not totally coherent during this conversation."

We believe the proof was clear and convincing that Ms. Fineout had failed to rectify the numerous conditions in her life that would likely subject her

children to abuse or neglect if they were returned to her, and we affirm the judgment of the trial court.

## VI.

The judgment of the trial court is affirmed. Remand this cause to the Robertson County Juvenile Court for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.


_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.


CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE